UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| NANCY DRIEND,<br><br>    Plaintiff,<br><br>v.<br><br>ITRON INC.,<br><br>    Defendant. | Civil No. 3:15-cv-00081-GFVT-EBA<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

*** *** *** ***

This matter is before the Court on Defendant's Motion for Summary Judgment. [R. 12.] Nancy Driend has alleged the Itron terminated her employment due to her age in violation of Federal and State law. However, Driend has not established a prima facie case of age discrimination and, for the reasons stated below, this court will **GRANT** summary judgment in favor of the Defendant.

**I**

Nancy Driend was a Sales Order Manager at a manufacturing facility of Defendant company, Itron, Inc., a Washington state corporation, located in Owenton, Kentucky. [R. 1 at ¶ 4.] Driend had been employed by Itron's predecessor, Sprague Textron in Bridgeport, Connecticut since February 12, 1979, she was 32 years old at the time she was hired. [*Id*. at ¶ 6.] She moved to Owenton, Kentucky in 1989 while working with another Itron predecessor, Schlumberger, Inc., which Itron purchased in 2009. [*Id*. ¶¶ 7-8.] On January 30, 2015, after 35 years with the company and its predecessors, Nancy was terminated in a meeting by Human

Resources Manager Tim Shelburne and Logistics Manager Melissa David. [*Id*. at ¶ 1, 11.] At the time of her termination Driend was 68 years old. [*Id*. at ¶¶ 3, 8.]

David was Driend's supervisor at the time of her termination. Driend supervised four Production Schedulers, Bethany Fogle, Angela Duncan, Steve Dodson, and Valerie Kenner, all of whom Driend describes as substantially younger than her. [R. 12 at 4; R. 19-1 at ¶ 10(a).] In March or April of 2014, David observed Fogle "crying and upset at her desk," when David inquired as to why she was upset Fogle explained that Driend had yelled at her and "pointed her finger in a threatening manner." [R. 12 at 5; R. 12-2 at ¶ 2; R. 12-3 at ¶¶ 3-4.] Specifically, Fogle said that Driend was "micromanaging" and yelling at her for no reason and "acted like [she] did not know how to do [her] job." [R. 12-3 at ¶ 4.] David informed Driend that Fogle was upset and stated that she explained to Driend that her communication style was not working with Fogle and she needed to adjust it. [R. 12-2 at ¶ 3.] Driend, however, stated that David told her that Fogle came into her (David's) office crying stating that Driend "was picking on her." [R. 19-1 at ¶ 4.] She stated that she told David that this was the first time someone had complained about her in this manner. [*Id*.]

According to David, Driend appeared to be upset about how Fogle reacted and that she had reported her behavior to David. [R. 12 at 5; R. 12-2 at ¶ 3.] Fogle reported that Driend called her into her office on at least two occasions to ask why "she [Fogle] threw her under the bus," and to tell her that she was to report to her (Driend) if Fogle had a problem rather than go above her to David. [R. 12-3 at ¶¶ 5-6.] These actions, Fogle stated, made her feel intimidated. [*Id*.] Driend contends that when she called Fogle into her office to ask what she had done, Fogle replied "nothing, I was having a melt down and took it out on you." [R. 19-1 at ¶ 4.] Driend then asserted that she told Fogle that she had an "open door policy" and that if there was a

2

problem "[they] could sit down together . . . and hopefully resolve the problem." [*Id*.] In her deposition, Driend stated that she felt Fogle reporting her complaints to David were inappropriate because "she should have come to [Driend] first." [R. 12 at 5-6; Pl. Depo. at 46-49.]

In November of 2014, David asked Fogle how things were going to which Fogle replied "not well." [R. 12-2 at ¶ 4.] Fogle explained that she did not mention anything sooner because of the way Driend treated her after the initial report, and was "afraid her work environment would get worse." [R. 12-3 at ¶ 14.] Fogle described incidents of Driend embarrassing her by "yelling" at her in front of her colleagues, and contacted her about time sensitive projects when she knew Fogle was not at work or out on approved sick leave. [*Id*. at ¶¶ 8-13; R. 12-2 at ¶¶ 5-8.] Almost all the Itron employee Declarations verbatim reported that Driend "reprimanded [Fogle] in a way that made her feel terrible." [R. 12-1 at ¶ 4; R. 12-2 at ¶ 5; R. 12-3 at 13; R. 12 at ¶ 7.]

David also stated that she met with two of Driend's other subordinates, Valerie Kenner and Steve Dodson who were reluctant to share information with David and did not give Declarations. [R. 12-2 at ¶ 13; R. 12-1 at ¶ 3.] According to David, Ms. Kenner stated that she "was not afraid to stand up to Ms. Driend" and Mr. Dodson stated that he just let Driend's behavior "roll off his back." [*Id*.; *see also*, Exhibit C.] Neither Ms. Kenner nor Mr. Dodson reported specific instances of unprofessional or intimidating behavior from Driend. [*Id*.]

Another of Driend's supervisees and close friend to Bethany Fogle and Tim Shelburne, Angela Duncan, gave a Declaration describing Driend's behavior towards her as well. [12-2 at ¶ 11; R. 12-4.] In a December, 2014, meeting with David, Duncan reported behavior similar to that which was experienced by Fogle. [R. 12-2 at ¶ 11.] Duncan stated that Driend would

contact her repeatedly when she was on approved sick leave in ways which Duncan described as "inappropriate." [R. 12-4 at ¶¶ 3-5.] She reported that Driend told her, "with a raised voice [and] pointing her finger," on several occasions "no more sickness in 2015." [*Id*. at ¶¶ 6-8.] Both David and Fogle corroborated this. [*See* R. 12-2 at ¶ 8; R. 12-3 at ¶ 11.]

In December of 2014, David informed Human Resources Manager, Tim Shelburne, of the complaints from Fogle and he and David began an investigation into the matter. [R. 12-1 at ¶¶ 2-3.] He stated that he also conferred with Itron's IT department. [*Id*. at ¶ 3.] He seemingly confirmed the allegations against Driend by speaking with Fogle and Duncan. [*Id.* at ¶¶ 4-9; R. 12-4.]

Shelburne stated that he and David were particularly concerned with Driend's instructions to both Fogle and Duncan that they were "required to follow the chain of command," which he said essentially prohibited the women from reporting their complaints to anyone besides Driend. [*Id*. at ¶ 10.] Driend testified in her deposition that she thought Fogle should have come to her first and that she "has always been taught to follow the chain of command." [R. 12 at 5; Pl. Depo. at 46-49.] Driend did not admit to any poor treatment of Fogle or Duncan.

Shelburne also spoke with the Itron's IT department during the investigation and discovered that Driend was falsifying documents by entering or changing work orders using other employees' profiles. [R. 12-1 at ¶ 13.] All of the Itron employees stated that Driend's actions caused "confusion and additional work." [*Id.*; 12-2 at ¶ 14; 12-3 at ¶ 12; 12-4 at ¶ 9.] Driend admitted that she booked sales orders on behalf of other employees. [12-1 at ¶ 17; R. 12-2 at ¶ 17; R. 19-1 at ¶ 59.]

After the investigation, which Shelburne stated took over two months, he concluded that Driend had "engaged in retaliatory, threatening and unprofessional behavior" towards her

subordinates. [R. 12-1 at ¶ 14.] Shelburne stated that this behavior violated Itron's Respect and Professionalism in the Workplace Policy, Code of Conduct, and Employment Conduct Policy. [*Id*.] Shelburne needed to obtain approval from Itron's corporate HR and legal team before firing Driend, which he eventually received. [*Id.* at ¶ 15; 12-2 at ¶ 18; R. 12 at 10.] In the meantime, David proceeded with Driend's previously scheduled annual performance review, which was conducted on January 29, 2015. [R. 12-1 at ¶16; R. 12-2 at ¶ 15.]

During the performance review, David ranked Driend "Below Average" in the Leadership/Talent Management category and verbally mentioned her communication style and body language, and that she "needed to work on [it]." [R. 19-1 at ¶¶ 34-36; R. 12 at 10; R. 12-2 at ¶ 15.] The remaining reviews were favorable for Driend. [R. 19-1 at ¶¶ 44-49.] Driend told David that she did not agree with the one negative statement and wanted to discuss it with Personnel, to which David responded that she would go to Shelburne and get back to her. [*Id.* at ¶ 50.] Driend also wrote down her comments on her Review, which she saved in her computer, but did not sign or send. [*Id.* at ¶¶ 51-52.]

The following day, January 30, 2015, at a meeting with Shelburne and David, Driend was terminated. [R. 12 at 10.] Shelburne stated that her age had nothing to do with his decision. [*Id*.; R. 12-1 at ¶ 18.] Instead, he explained that after he conducted his investigation, he had a "reasonable good-faith basis" to believe that Driend had engaged in certain misconduct that was severe enough to justify termination. [R. 12-1 at ¶ 18.] Following her termination, Driend's job duties were absorbed by nine existing employees, all of whom are younger than Driend. [*Id.* at ¶ 19; R. 12-2 at ¶ 19; R. 19 at ¶ 3.]

Driend denies that she behaved in the ways described by Duncan and Fogle; pointing out that there were no witnesses and the statements cannot be verified. [R. 19-1 at ¶ 9.] Driend

5

states that she was fired because of her age, claiming the Itron willfully violated the employment Act of 1967 ("ADEA") and state statute KRS § 344.030. [R. 1 at ¶¶ 1, 5, 18-20.] She stated that she was "the oldest person in the office by far" and was terminated after "a typical glowing appraisal." [R. 19-1 at ¶ 10(a).] Further, she stated that the incident involved a much younger person than she. [*Id*. at ¶ 38.] Driend asserted that she was unaware of any of the charges against her, with the exception of the March/April incident, until she hired a lawyer. [*Id*. at ¶ 8.]

She stated that, despite David and Shelburne's assertions, the company did not counsel her and disciplined her differently than it did with younger employees. [*Id*. at ¶¶ 17-18, 22-25; R. 19-1 at ¶ 6; Driend Exhibit 14.] Mainly, Driend states that Itron never did progressive discipline before terminating her, as it did with younger employees. [*Id*. at ¶¶ 23-25; Driend Exhibit 14.] This, she says, establishes that younger people were treated more favorably than she was. [R. 19 at 3.]

Driend also stated that she was falsely accused of entering orders using other employee's log-ins, something that David was "harshly cross-examined" on by the Kentucky Division of Unemployment Insurance, Unemployment Appeals Branch referee, and "put [Shelburne] in time out." [R. 19-1 at ¶¶ 19-20.] Further, David did not say Driend was doing anything improper when she entered an employee's name as a "planner" when changing or entering orders. [*Id.* at ¶ 21.] Nor could David explain how Driend's actions could be harmful to the company or its employees. [*Id*. at ¶ 62.] Driend also pointed out that her job duties were absorbed by nine "materially younger people." [R. 19 at 3; *see also*, R. 12 at 10; R. 12-1 at ¶ 19; R. 12-2 at ¶ 19.]

**B**

Under Federal Rule of Civil Procedure 59, summary judgement is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

6

to judgment as a matter of law." Fed.R.Civ.P. 56. A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment the Court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden is initially on the moving party to inform the court "of the basis of its motion, and [to identify] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once this burden is met, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Further, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, "the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## II

### A

Driend alleges that Itron violated state and federal law by willfully violating the Age Discrimination in Employment Act and KRS § 344.030. Because Driend has not demonstrated a prima case for age discrimination, summary judgment will be granted in favor of Defendants.

7

In order to establish a *prima facie* case for age discrimination, a plaintiff must show: (1) she was a member of the protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the particular position; and (4) she was replaced by a substantially younger employee or additional evidence that the employer was motivated by age. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). The Kentucky Civil Rights Act analyzes claims alleging age discrimination in the same manner as ADEA so the analysis here will suffice for both the ADEA and KRS § 344.030. *See Rights Sanders*, 2010 U.S. Dist. LEXIS 88621, at *22.

A violation of the ADEA may be established by either direct or circumstantial evidence. *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008). Circumstantial evidence does not establish discriminatory animus on its face, but instead allows a fact finder to reasonably find that discrimination occurred. *Id*. The burden of proof falls on the plaintiff to establish that "age was the "but-for" cause of their employer's adverse actions." *Rights Sander v. Gray TV Grp., Inc.*, No. 5:08-CV-412-KSF, 2010 U.S. Dist. LEXIS 88621, *1 at *15 (E.D. Ky. Aug. 13, 2010) (citing *Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009)).

"If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's [termination]." *Grosjean*, 349 F.3d at 335 (citing *Kline v. TVA*, 128 F.3d 337, 342 (6th Cir. 1997)). A Plaintiff can defeat this by presenting sufficient evidence for the jury to reasonably reject an employer's explanation. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 153 (2000).

Factors one through three are not in dispute. [R. 19 at 2.] Itron states that Driend cannot satisfy the fourth factor of the analysis, that she cannot prove that she was replaced by a substantially younger employee or otherwise present evidence that Itron's decision was

8

motivated by age. Driend, however, asserts that the fact that she was the oldest person in the office and was "replaced" by nine younger employees is enough to satisfy the fourth prong of the analysis. Driend also presents evidence that employees younger than her were treated differently than she was when accused of unprofessional conduct, which she states also satisfies the fourth prong.

## B

First, Driend states that the fourth prong is satisfied because her job duties were assumed by nine "materially younger" employees. Case law for this analysis suggests that age differences between the terminated employee and a replacement of ten or more years is sufficient to meet the fourth prong of age discrimination in a *prima facie* case. *See Grosjean* 349 F.3d at 336-38 (internal citations omitted). Further, an age difference of six years or less is not significant. *Id.* at 340. Driend stated that all of the office employees who replaced her were at least six years younger than her, and five of the employees she listed were a minimum of ten years younger than Plaintiff. [R. 19-1 at ¶ 78, 82.]

The Sixth Circuit has consistently held that "for the purposes of the [ADEA] . . . a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Grosjean* 349 F.3d at 336; *see also*, *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1990). In other words, "a person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

Itron states that the nine employees that absorbed Plaintiff's job duties were already performing related work. [R. 12 at 11.] Driend has not presented any evidence to the contrary,

9

thus, Driend is unable to show that a significantly younger person "replaced" her under the Sixth Circuit's definition.

C

Second, Driend attempts to satisfy the fourth prong by showing that similarly situated employees who were not as old as her were treated more favorably when they were accused of unprofessional conduct. When identifying a suitable or close comparator for analyzing age discrimination claims, the coworkers compared must be "similarly situated in all relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352. An exact correlation is not necessary, but she must show that the individual she seeks to draw a comparison to "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id*. Further, Kentucky case law has added that the individuals must be of similar qualification and subject to the same reviewers at or about the same time. *Board of Regents v. Weickgenannt*, 485 S.W. 3d 299, 308 (Ky. 2016).[1] The Sixth Circuit in the past has cautioned against applying the "similarly situated" standard too narrowly. *Vinova v. Henry Cnty. Bd. Of Educ.*, 2016 U.S. Dist. LEXIS 125563 (E.D. Ky. Sept. 15, 2016) (citing *Martin*, 548 F.3d at 412).

Driend presents evidence that her former boss, Errol Yacoob, who was five years her junior, was "given a second chance" when he faced criticism for yelling at employees. [R 19 at 3.] However, while Driend does have evidence that Yacoob's disciplinary procedures differed from her own, Yacoob did not deal with the same supervisor (he reported to Chris Guenthner).

---

[1] This case was brought before the Kentucky Supreme Court and this stipulation does not appear to be applied anywhere else outside of Kentucky state law cases. *See e.g.*, *Tucker v. Bluegrass Reg'l Mental Health Mental Retardation Bd.* 2017 Ky. App. LEXIS 13 (Ky. Ct. App. Jan 20, 2017).

Nor was he in the same or similar position as the Plaintiff (he was her boss and thus, had a broader scope of duties.) Yacoob was also only five years younger than the Driend, which would make any evidence related to his firing insufficient for Plaintiff's age discrimination claims. *See Grosjean*, *supra.*

Plaintiff also draws a comparison between herself and Bryan Carroll, whom the Plaintiff states is "in a younger generation than [Driend.]" [R. 19 at 4.] At first glance, this appears to be a better match since Carroll and Driend both reported to Melissa David. However, Driend has produced no evidence to support either his age or that he engaged in any type of workplace misconduct. Driend admits as much as she repeatedly cited to interrogatories inquiring about Bryan Carroll's behavior toward a subordinate, Larry Estes, to which Defendant responds: "Defendant is aware of no documents responsive to this request." [*Id.*] Plaintiff's bare assertions and subjective belief are not enough to support a prima facie case for a disparate discipline claim. *See Samuels v. Corr. Med. Servs.*, 2014 U.S. Dist. LEXIS 75284, at \*1, \*21 (E.D. Ky. June 3, 2014); *see also*, *Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 171 (6th Cir. 1996).

**D**

Finally, Itron argues that Driend has presented no evidence that her age was the "but-for" cause of her termination. In her deposition, when asked why she believed she was terminated based on her age, Driend responded that she had 36 years of employment, she was "innocent of all charges," and that there was no reason for her firing "other than [her] age and disability.[2]" [*See* R. 12 at 12.]

---

[2] Driend has not brought a disability claim.

Driend provides no support for her claim for age discrimination. The fact that Driend was a long-term employee of the company does not provide any evidence that she was discriminated against because of her age, nor does it do anything to rebut Itron's non-discriminatory reasons for her firing. In the Sixth Circuit, "an employee's evaluation of his own performance or qualifications is irrelevant as a matter of law." *Mynatt v. Lockheed Martin Energy Sys., Inc.*, 217 F. App'x 470, 477 (6th Cir. 2008) (citing *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987)). Further, a plaintiff's perception of her competence is also immaterial. *Id*. Thus, the fact that Driend was a long-term employee is irrelevant to this case.

Further, whether or not Driend was "innocent on all charges" is also irrelevant. "[I]t is the manager's motivation that is the key factor, not the employee's perception." *Id*. (citing *Shapira v. Lockheed Martin Corp.*, 88 F. Supp. 2d 824-25 (E.D. Tenn. 1998)). Melissa David and Tim Shelburne stated that Driend was fired after their investigation found that she engaged in unprofessional behavior in violation of the company's policies. Even if they were mistaken in their conclusion that Driend violated their Professional Code of Conduct, that does not amount to Driend being discriminated against on the basis of age. *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285-289 (6th Cir. 2012) ("Even if that reason is untimely found to be 'mistaken, foolish trivial, or baseless,' the employee cannot establish pretext") (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998). Driend has failed to provide evidence to the contrary, thus, this Court must conclude that that Itron made a reasonably informed and considered decision in its decision to terminate Driend.

Driend makes several other arguments in her Response, including that she was harassed by Ms. Fogle, Ms. Duncan, Mr. Shelburne, and Ms. David. [R. 19 at 11.] However, these were not brought in the initial complaint and are not relevant to her age discrimination claims.

By looking at all the evidence provided, drawing all reasonable interferences in Driend's favor, the Court concludes that she has failed to show more than a subjective belief that age was the "but-for" reason for her termination. Specifically, she failed to definitively show that employees younger than her received disparate treatment when disciplined, that she was replaced by a substantially younger employee, or any other evidence that shows that age was a motivating factor in her termination. Most of Driend's claims were based on her subjective belief that she was treated unfairly due to her age, or that younger employees were treated better. "A plaintiff's subjective belief of discrimination is simply insufficient to establish a claim for trial." *Downs v. Shinseki*, 2013 U.S. Dist. LEXIS 115232, at *1, *28 (M.D. Tenn. Aug. 14, 2013) (citing *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 491 (6th Cir. 2006)). Because of this, Driend has failed to present any issue of material fact that a fact finder could reasonably find that discrimination occurred. Consequently, summary judgment in favor of Itron is warranted.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that the Defendant's Motion for Summary Judgment [R. 12] is **GRANTED**, the case will be **STRICKEN** from the record, and an appropriate judgment will be entered contemporaneously herewith.

This the 1st day of September, 2017.

Gregory F. Van Tatenhove
United States District Judge